# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9398 | **DATE** | 3/12/2004 |
| **CASE TITLE** | Bradford vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due ___.
(3) ☐ Answer brief to motion due ___. Reply to answer brief due ___.
(4) ☐ Ruling/Hearing on ___ set for ___ at ___.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ___ set for ___ at ___.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ___ set for ___ at ___.
(7) ☐ Trial[set for/re-set for] on ___ at ___.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ___ at ___.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order granting defendant's motion for summary judgment on all counts. Judgment is, therefore, entered in favor defendant and against plaintiff. Any pending motion in this case is terminated as moot. All schedules including pretrial conference set for 4/15/04 and trial set for 4/26/04 are also vacated.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| ✓ | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

courtroom deputy's initials: MPJ

number of notices: 3
date docketed: MAR 15 2004
docketing deputy initials
3/12/2004
date mailed notice: MPJ
mailing deputy initials

Document Number: 38

RICARDO BRADFORD )
)
      Plaintiff, )
)
v. ) No. 02 C 9398
)
CITY OF CHICAGO, )
)
      Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Ricardo Bradford was employed as an administrative assistant by defendant City of Chicago in its Department of Transportation ("DOT"). Mr. Bradford is African-American and suffers from bipolar disorder. His condition is marked by a cycle of periods when he is able to perform his job functions and periods when his symptoms make work impossible. Although the parties differ as to some details, they agree that Mr. Bradford's illness caused him to miss a great deal of work; he took at least 70 sick days in 1998, at least 50 in 1999, and at least 151 in 2000.

The events leading to this lawsuit began on December 16, 1999. That day was a payday for the preceding 14-day pay period. Either because Mr. Bradford failed to turn in edited time sheets for himself (Chicago's version of the story) or because of an error on the part of the city (Mr. Bradford's version), Mr. Bradford received no paycheck on that day. Mr. Bradford became visibly upset, blamed the timekeeping staff for his failure to receive a

check, and loudly confronted fellow employees about the oversight. He also telephoned the mayor's office and commissioner's office to complain. Still upset, Mr. Bradford then called his Employee Assistance Program ("EAP") counselor, Robert Gardner. The defendants claim, and the plaintiff disputes, that during the course of this heated telephone conversation, when Mr. Gardner encouraged him to "vent," Mr. Bradford stated that he would like to wrap his hands around the neck of fellow employee Patricia Perino, who was partly responsible for entering and editing time records for DOT employees. Ms. Perino overheard the conversation from her nearby cubicle and reported to Donald O'Malley, a liaison between the DOT and the city's Violence in the Workplace office, that she had been threatened.

That same day, Mr. Bradford contacted his superior, Joan Ross, the director of administrative services for the DOT, and told her of the problem he was having with his check. When she returned to her office, the parties agree, Mr. Bradford was frustrated and speaking in a loud voice. He told Ms. Ross, "You knew about this," referring to the problem with his time entry and paycheck. According to the city, as Ms. Ross turned to enter her office, Mr. Bradford said, "You know, this is the kind of stuff that make people go postal ... You know, that's how people get hurt." Mr. Bradford denies making any such statements. Ms. Ross reported her version of the events to Mr. O'Malley, who completed a Violence in

2

the Workplace incident report. Mr. Bradford was escorted from the building and placed on administrative leave with pay pending investigation of the day's events. Following that investigation, Stan-Lee Kaderbek, chief engineer and deputy commissioner of the DOT, recommended to the commissioner of the DOT that Mr. Bradford be suspended, not fired. Mr. Bradford was given a 15-day suspension, which began on March 23, 2000, and ended on or about April 5, 2000.

During the summer of 2000, Mr. Bradford filed a request for reasonable accommodation of his disability, requesting a transfer to a different location because the staff at the DOT viewed him as mentally disturbed, which caused him stress and worsened his condition. This request was supplemented by a letter from his physician, Dr. Piyush Buch, who recommended that Mr. Bradford be transferred so that he would no longer have to work with the individuals who claimed he had threatened them. In April of 2001, the transfer request was denied.

Mr. Bradford filed this three-count complaint alleging race discrimination in violation of Title VII (Count I), disability discrimination in violation of the Americans with Disabilities Act (Count II), and failure to accommodate his disability in violation of the Americans with Disabilities Act (Count III). The city moves for summary judgment in its favor on all counts. I grant the motion.

On a motion for summary judgment, I evaluate the admissible evidence in the light most favorable to the non-moving party in order to determine whether the evidence presents a genuine issue of material fact. *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002). There are two methods by which a plaintiff may prove intentional discrimination by an employer. He may rely on direct evidence, or in the alternative, he may rely on the burden-shifting method of proof established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Cheek v. Peabody Coal Co.*, 97 F.3d 200, 203 (7th Cir. 1996). Under the *McDonnell Douglas* framework, Mr. Bradford must first establish a *prima facie* case of discrimination, which creates a rebuttable presumption of unlawful discrimination. Mr. Bradford must prove, first, that he was within a protected class; second, that his performance met the city's legitimate expectations; third, that he suffered an adverse employment action; and finally, that the city treated similarly situated persons not in the protected class more favorably. *Cheek*, 97 F.3d at 204. If Mr. Bradford carries his *prima facie* burden, the city must articulate a legitimate, non-discriminatory reason for its termination decision. *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002). Mr. Bradford must then "present sufficient evidence that would enable a trier of fact to find that the explanation is pretextual." *Id.* For the purposes of this motion, the parties agree that Mr. Bradford is a member of two protected classes (African-

4

American and possessing a mental condition - bipolar disorder) and that he suffered an adverse employment action (a 15-day suspension). The dispute therefore centers on whether he met his employer's reasonable performance expectations and whether similarly situated employees who were white or non-disabled received more favorable treatment.

Mr. Bradford virtually abandons Count I, race discrimination, in his briefs in opposition to summary judgment. His Local Rule 56.1 statement of facts does not contain any direct or indirect evidence of race discrimination. No reference is made to similarly situated white employees who were not punished with suspension. Therefore, Mr. Bradford cannot prove this claim via the *McDonnell Douglas* system. The motion for summary judgment is GRANTED as to Count I.

Although Mr. Bradford supports his disability discrimination claim with greater care, the claim ultimately falls victim to the same flaw. He first attempts to argue that the discrimination may be proved by the direct method, but the allegedly bigoted comments made by various city employees do not reveal animus on the part of any decision-maker. As for the indirect method, Mr. Bradford has found a number of employees who violated the city's zero-tolerance violence in the workplace policy and were less harshly punished than he. One employee who called a co-worker at home and threatened to kill her was given a written reprimand. Another employee yelled

5

at and physically threatened her boss and also received a written reprimand. Other employees who became involved in shoving matches or physical altercations were given written warnings or suspensions shorter than 15 days. However, Mr. Bradford supplies no further information about these incidents which would permit me to evaluate whether the employees involved were in fact similarly situated to Mr. Bradford.

> In disciplinary cases -- in which a plaintiff claims that he was disciplined by his employer more harshly than a similarly situated employee based on some prohibited reason — a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct. This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.

*Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000) (internal citation omitted). In contrast, Mr. Bradford reports only the misdeeds of his fellow employees and the punishments they faced. He makes no claim that they worked in the same environment or under the same supervisor as he (it appears from the exhibits that they did not), that they were subject to the same standards, or that no mitigating circumstances operated in their favor. Thus, he has failed to establish a question of fact as to whether they were similarly situated.

Even if Mr. Bradford could make out a *prima facie* case, summary judgment for the defendant would still be appropriate, as Mr. Bradford cannot prove that the city's proffered reason for

6

suspending him was pretextual. Mr. Bradford denies that he threatened Ms. Perino and Ms. Ross, but there is no question that the city received two credible reports that he had made physical threats. Its decision to believe Ms. Perino's and Ms. Ross's version of events rather than Mr. Bradford's was a business judgment on the part of the city. Even if the city was unwise or wrong in its judgment, as long as it honestly and reasonably believed that Mr. Bradford made those threats, it will survive a pretext challenge. *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1145 (7th Cir. 1994) (granting summary judgment to an employer that fired plaintiff based on the complaints of fellow employees about the plaintiff's deficient job performance, despite plaintiff's insistence that the employees were lying). The motion for summary judgment is GRANTED as to Count II.

In Count III, Mr. Bradford alleges that the city discriminated against him by failing to reasonably accommodate his disability. The accommodation Mr. Bradford sought was transfer to another department where he would have a new supervisor and new co-workers. As a threshold matter, the ADA does not require an employer to transfer an employee to avoid working with certain supervisors or co-workers. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 526 (7th Cir. 1996) ("[T]hat decision remains with the employer. In essence, [plaintiff] asks us to allow her to establish ... who will supervise her. Nothing in the ADA allows this shift in

7

responsibility"); *Kolpas v. G.D. Searle & Co.*, 959 F. Supp. 525, 530 (N.D. Ill. 1997) (Holderman, J.) ("It is not a reasonable accommodation for an employer to have to transfer an employee to a position under another supervisor"). Therefore, it is unnecessary to pursue the analysis any further. The motion for summary judgment is GRANTED as to Count III.

ENTER ORDER

*Elaine E. Bucklo*
**Elaine E. Bucklo**
United States District Judge

Dated: March 12, 2004